**Affirm; Opinion Filed June 16, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01307-CR**

**JOHN FRANCIS KENNEDY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 069725**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

A jury convicted John Francis Kennedy of possessing between four and two hundred grams of methamphetamine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d). On appeal, Kennedy argues there is legally insufficient evidence that he possessed methamphetamine. He also argues that he received ineffective assistance of counsel. We affirm the trial court's judgment.

## I. Background

Sergeant Shane Kumler of the Denison Police Department received reports from some of his confidential informants that Kennedy was selling heroin in Grayson County. Kumler asked one of his informants, Reba McKee, to find out

where Kennedy lived. McKee contacted Kennedy via social media, and Kennedy provided McKee with his phone number. After a telephone conversation in which McKee told Kennedy that she was looking for heroin, Kennedy agreed to sell heroin to her. Kennedy provided McKee with an address—612 East Murray Street, Denison, Texas.

On August 14, 2018, Kumler gave McKee money to purchase heroin from Kennedy. He also gave her a cell phone that operated as a recording device. The cell phone transmitted directly to Kumler and downloaded the recordings to a computer so the police could watch the video and hear the audio of the transaction. Another detective drove McKee to a location close to the address provided by Kennedy. McKee walked to the address, met and talked to Kennedy, conducted the transaction, and walked back to the detective's vehicle. Kumler retrieved the narcotics[1] and the recording device from McKee. After reviewing the video of the transaction, Kumler obtained a search warrant for the residence.

On August 16, 2018, Kumler and a team of narcotics investigators and patrol officers arrived at Kennedy's house to execute the search warrant. Finding the front door unlocked, they entered the house and detained two individuals inside the

---

[1] Although Kumler testified that the black tar-like substance his informant purchased from Kennedy was heroin, he conceded that the substance had not been lab tested. The court allowed the evidence to be admitted with the understanding that the jury would not take the sergeant's word that the substance was heroin.

house—Kennedy and a white female.[2] A third individual, a white male,[3] was in the back yard. After providing Kennedy with a copy of the search warrant and a Miranda warning, the team searched the house. On a table in the living room, the police found two small plastic bags of a tar-like substance that field-tested positive for the presence of heroin. On a shelf in the kitchen, they found three plastic bags of a crystal-like substance that field-tested positive for the presence of methamphetamine and had an approximate weight of seventeen grams. They also found two plastic bags of marijuana, digital scales, numerous baggies, pipes, and other drug paraphernalia. On another kitchen shelf, they found a wooden box containing miscellaneous pills and another plastic bag with a crystal-like substance that field-tested positive for methamphetamine and had an approximate weight of seven grams. When the police entered the house, Kennedy was holding one cell phone and had a second cell phone in his pocket. The police found a third cell phone in the living room. Kennedy had $759 in cash in the front pocket of his pants.

The substances found in Kennedy's house were transported to the Department of Public Safety (DPS) crime lab in Garland, Texas. Daniel Hauser, a DPS forensic scientist, examined the various substances submitted, although, in accordance with

---

[2] The white female was not identified at trial.

[3] The police determined that the white male in the backyard was the owner of the house who rented the house to Kennedy. He was not detained by the police.

the laboratory's policy, he performed a confirmation analysis of only one substance.[4] Hauser described the procedures utilized by the laboratory to identify and maintain chain-of-custody for evidence being tested. Hauser testified that he analyzed the crystal-like substance and concluded that the substance, weighing 6.81 grams, contained methamphetamine.

Kennedy was charged with one count of possession with intent to deliver a controlled substance of four grams or more but less than 200 grams of methamphetamine. The case proceeded to trial where a jury found him guilty as charged. Kennedy chose to have the jury assess his punishment. He pled not true to the three enhancement paragraphs in the indictment, which alleged two prior felony convictions for drug-possession offenses and a prior felony conviction for driving while intoxicated. After finding the enhancement paragraphs true, the jury assessed punishment at confinement for life in the Texas Department of Criminal Justice. Kennedy filed a motion for new trial, arguing the verdict was contrary to the law and the evidence. After his motion was overruled by operation of law, Kennedy filed a timely notice of appeal.

## II. Discussion

Kennedy presents two issues for our review. First, he contends that the evidence is legally insufficient to support his conviction because he was not in

---

[4] Hauser explained that when multiple substances are submitted for testing, the lab does not analyze every substance. For efficiency purposes, the lab determines which substance to completely analyze based on the amount and the level of penalty that can be charged for the offense of possessing that substance.

—4—

exclusive possession of the house where the controlled substance was found. In his second issue, he contends that he received ineffective assistance of counsel because his trial counsel conceded his guilt during closing argument.

## A. Legal Sufficiency

In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). We defer to the trier of fact to "fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

Kennedy was charged with possession with intent to deliver more than four grams of methamphetamine. HEALTH & SAFETY § 481.115(a), (d). To prove the requisite intent to possess, the State was required to prove that Kennedy:  (i) exercised control, management, or care over the substance in question and (ii) knew that the substance was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Regardless of whether this evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). Thus, mere presence at the location where drugs are found is insufficient, by itself, to establish

the requisite degree of control to support a conviction. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). That said, possession need not be exclusive. *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Where, as here, the defendant was not in exclusive possession of the place where the substance was found, there must be additional independent facts and circumstances that link him to the contraband. *Tate*, 500 S.W.3d at 413–14.

The following is a non-exclusive list of possible "affirmative links" that Texas courts have recognized as sufficient, either singly or in combination, to establish a defendant's possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12. Intent to deliver[5] may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether

---

[5] "Deliver" means to transfer, actually or constructively, to another a controlled substance, including an offer to sell a controlled substance. HEALTH & SAFETY § 481.002(8).

the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the defendant. *Id.*

On appeal, Kennedy argues that the evidence does not rise to the requisite level of confidence that his connection with the contraband was more than just fortuitous. He points out that he was not the only person in the house when the police arrived. He contends there is no evidence that he lived at the residence; he argues that the evidence only shows that he happened to be at the residence on two occasions. He contends that evidence of the sale of heroin two days prior to the execution of the search warrant does not connect him to the methamphetamine found during the search. When the police entered the house, Kennedy was in a bedroom. He contends there is no evidence that he knew there was methamphetamine in the kitchen or that he had ever been in the kitchen.

Even in the absence of direct evidence, we must view the circumstantial evidence in a light most favorable to the verdict, and defer to the jury's responsibility to draw reasonable inferences from the evidence. *Villa*, 514 S.W.3d at 232. Although the factors listed in *Evans* guide our analysis, no single factor is dispositive because our ultimate inquiry is whether the jury was rationally justified in finding Kennedy guilty based on the combined and cumulative force of the evidence and reasonable

inferences therefrom. *See Tate*, 500 S.W.3d at 414. In this case, Sergeant Kumler testified that Kennedy was inside the house and was present when the search was conducted. He did not attempt to flee. The owner of the house told police that Kennedy was leasing the house; thus, Kennedy had the right to possess the place where the drugs were found. Kumler testified that McKee purchased heroin from Kennedy at that house. McKee testified at trial that she went to that house and purchased heroin from Kennedy. In addition, the jury viewed the video that depicted McKee going to the house and purchasing heroin from Kennedy.

During the police search of Kennedy's house, the contraband was either in plain sight or easily accessible. Police found two small plastic bags of a tar-like substance that field-tested positive for the presence of heroin on a table in the living room. On shelves in the kitchen, police found three bags of a crystal-like substance that field-tested positive for the presence of methamphetamine, two plastic bags of marijuana, digital scales, numerous baggies, pipes, and other drug paraphernalia. They also found a wooden box containing miscellaneous pills and another plastic bag with a crystal-like substance that field-tested positive for methamphetamine. The police found several cell phones and discovered that Kennedy had $759 in cash in his pocket.

We conclude there is evidence showing an affirmative link between Kennedy and the methamphetamine found in the kitchen. A jury could have rationally inferred from the evidence that Kennedy lived in the house, and that he exercised actual care,

custody, control, or management over the house and its contents, including the methamphetamine. *See id.* In addition, considering the amount of methamphetamine found, the baggies, the digital scales, the amount of cash in appellant's pocket, and the testimony that Kennedy sold heroin two days earlier, a rational jury could have inferred that Kennedy intended to sell the methamphetamine in his possession. *See Taylor*, 106 S.W.3d at 831. We conclude the evidence is legally sufficient to support the jury's verdict. We overrule Kennedy's first issue.

**B. Ineffective Assistance of Counsel**

In his second issue, Kennedy asserts that his trial counsel conceded his guilt during closing argument, thus depriving him of effective assistance of counsel at trial. Kennedy was entitled to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. The right to counsel, however, does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984); *Villa v. State*, 417 S.W.3d 455, 462–63 (Tex. Crim. App. 2013). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App.

2017). Review of counsel's representation is highly deferential; we presume that counsel's conduct fell within a wide range of reasonable representation. *Villa*, 417 S.W.3d at 463; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). In order for an appellate court to find that counsel was ineffective, counsel's alleged deficiency must be affirmatively demonstrated in the record. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). Appellant must produce record evidence sufficient to overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. *Strickland*, 466 U.S. at 689; *Villa*, 417 S.W.3d at 463.

Appellant's complaint of ineffective assistance is based on several statements made by his trial counsel during closing argument. After expressing concern about "this kind of law enforcement," trial counsel stated:

> There's a difference in the law between innocent and not guilty. That man sitting right there, he ain't innocent. He's not. But I'm asking you to find him not guilty because of the behavior of these people.

Counsel then expressed how appalled he was by the manner in which law enforcement cut corners and blatantly ignored the rules in this case. He invited the jury to share in his concern by acquitting Kennedy and sending a message to the police that the citizens of the county expected them to adhere to the rules.

In his appellate brief, Kennedy acknowledges that his trial counsel was technically correct when he stated there is a difference in the law between "innocent" and "not guilty." However, because trial counsel did not explain this difference to

the jury, Kennedy speculates that when counsel said, "he ain't innocent," the jury heard trial counsel say that Kennedy was guilty. Citing *United States v. Williamson*, 53 F.3d 1500 (5th Cir. 1995), Kennedy argues that this "concession of guilt" by his trial counsel was a breakdown in the adversarial process sufficient to trigger a presumption of prejudice, thus satisfying both prongs of the *Strickland* test for ineffective assistance. *See Williamson*, 53 F.3d at 1511.

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id.* at 5–6. Indeed, closing argument is an area where trial strategy is most evident. *Butler v. State*, No. 05-98-02161-CR, 2000 WL 100116, at *3 (Tex. App.—Dallas Jan. 31, 2000, no pet.) (not designated for publication) (citing *Flemming v. State*, 949 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1997, no writ)). We do not judge trial counsel's performance with the benefit of hindsight. *Mata*, 226 S.W.3d at 430. Nor do we inquire into counsel's trial strategy unless from all appearances there is no plausible basis in strategy or tactics for counsel's actions. *Ross v. State*, 802 S.W.2d 308, 312 (Tex. App.—Dallas 1990, no pet.). In this case, trial counsel's statement, "he ain't innocent," may have been an acknowledgment that Kennedy was not a model citizen. But we do not know counsel's strategy in making the statement because the record is silent on the matter.

–11–

We must presume that the actions taken by trial counsel were part of a strategic plan for representing his client. *Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009, no pet.).

The record on direct appeal will generally "not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard" as "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). Trial counsel should ordinarily be given an opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Prine*, 537 S.W.3d at 117 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Brennan*, 334 S.W.3d at 71. Based on the totality of this record, we cannot conclude that Kennedy has established that trial counsel's performance fell below an objective standard of reasonableness. Therefore, we are unable to conclude that Kennedy has met the requirements of *Strickland*. We overrule Kennedy's second issue.

## III. Conclusion

Having overruled both of Kennedy's issues, we affirm the trial court's judgment.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

191307f.u05

Do Not Publish
TEX. R. APP. P. 47.4



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN FRANCIS KENNEDY,
Appellant

No. 05-19-01307-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 069725.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 16th day of June, 2021.